IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

_____

TIFFANY BOND,                                       :
                                                    :
        Plaintiff,                                  :
                                                    :
vs.                                                 :
                                                    :
MATTHEW DUNLAP, in his official                     :
capacity as the Secretary of the State of           :
Maine, and JANET MILLS, in her official             :
Capacity as the Governor of the State of            :        Action #1:20-cv-00216-NT
Maine, and TROY JACKSON, in his official:
Capacity as the President of the Maine              :
Senate, and SARA GIDEON, in her official :
Capacity as the Speaker of the House                :
                                                    :
        Defendants.                                 :
_____             :

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

It was Plaintiff's expectation that the Defendants would provide a good faith brief

outlining the thoughtful steps they had taken in a crisis situation based on what actions a

reasonable candidate could take in a pandemic. That was not the response submitted.

Instead, Defendants chose to provide a brief that, at least in part, highlights what is wrong

with what the average citizen runs into when they try to participate in government –

where bureaucracy reigns, errors are the fault of the citizen and not the government,

perfect communication and documentation is required from the citizen but not the

agency, and guarding against extraordinarily rare "fraud" prevails above the interest of

good faith citizen efforts.

1

Rather than explain a good faith effort of the Defendants as noted above, the Defendants' Memorandum of Law paints a picture using where the Plaintiff is "not sufficiently diligent"[1], "[t]he record suggests that her claim is overstated"[2], requested information that Plaintiff "clearly had",[3] "unable to persuade enough Maine voters to support her candidacy"[4], and "beyond the Court's power".[5] Plaintiff departs from her normal style in writing to respond, and will use plain English as much as possible so that the average citizen has the ability understand what the lawyers are hashing out. Plaintiff is not lazy, not exaggerating, worthy of response from the Governor's office, has sufficient support, and given that the Defendants presume any failures within their system are the Plaintiff misleading the Courts rather than their own failures, the Court is the only available recourse.

### Plaintiff was sufficiently diligent.

It is unclear how Plaintiff could have been more diligent with the State; communicating regularly, clearly, offering suggestions, and attempting to be a partner in solutions through this pandemic. The State, understandably, had heavy demands – Plaintiff navigated with grace, diligence, and humor through a myriad of documented communications, balancing consistent follow-up and managing the burden to staff in over-zealous inquiries.[6]

Plaintiff also made responsible, wise, and judicious choices with signature collection for both her own actions, and those of her volunteers; exactly the behavior we

---

[1] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶3, Page2
[2] *Id,* ¶52, Page22
[3] *Id,* ¶21, Page10
[4] *Id,* ¶54, Page22-23
[5] *Id,* ¶3, Page4
[6] See Response Affidavit of Plaintiff Tiffany Bond, and all Attachments, incorporated by reference.

should demand from anyone seeking to represent the State of Maine in federal office and guard our federal laws. The Governor's office, however, offered a mix of messaging as to what was appropriate, declaring in filings that "Plaintiff remained free to collect signatures throughout the period of this pandemic under all of the Governor's Orders."[7] Though that may be technically true, it is not functionally accurate. The Governor's Orders explicitly prohibited gatherings to as few as 10 people,[8] did not declare signature gathering an essential activity,[9] and the Governor's communication with the general public on April 10, 2020 made absolutely clear that door to door canvassing was not acceptable.[10] With no option to meet up with people in group settings or knock on doors, there were virtually no options remaining that were not extraordinarily burdensome to meet the ballot. Defendants cite as proof of this hurdle not being burdensome the following:

1. Two candidates[11] to make ballot who did so with substantial resources entirely or near entirely before the pandemic arrived in Maine,[12] and who have both submitted affidavits in this case supporting Plaintiff being on ballot; and

2. The "people's veto petition",[13] which was run by one of the top two parties in Maine, with approximately 291,210 members,[14] and having spent in excess of

---

[7] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶19, Page9

[8] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶13, Page7

[9] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶15, Page7

[10] See Attachment G, Page 2 *"Governor Mills' Stay Healthy at Home Order effectively prevents candidates for public office from traveling door to door to collect such contributions. Candidates can and should obtain these contributions online."*

[11] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶3, Page2

[12] See Response Affidavit of Plaintiff Tiffany Bond, ¶ 11

[13] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶3, Page2

> $600,000 on this campaign, with at least $246,731.09 in paying for petition
> circulars, excluding notary, printing, and any other costs associated with the
> collection of signatures other than those explicitly listed as "signature
> collection" from their campaign finance reports.[15] Additionally, from the
> campaign finance reports, the vast majority of these signatures also appear to
> have been collected before the pandemic.[16]

These are not comparable. This is also not the standard the state should be held to in
determining whether or not a candidate was diligent. The standard should be if the
process is similarly and reasonably burdensome to a diligent candidate without
extraordinary resources; otherwise we run auctions, not elections.

### Plaintiff did not overstate her claims.

Rather than acknowledge that the Defendants were overburdened and dropped the
ball, the Defendants decided to throw their full weight of the government's implied
authority and credibility behind suggesting Plaintiff was somehow misleading this Court
in her efforts. Plaintiff concedes a slight advantage over the average citizen in that the
Plaintiff is quite diligent with evidence, more colloquially known as "receipts."
Defendants claim the record "suggests that [Plaintiff's] claim is overstated"[17], awarding
far greater credibility to the State's affidavits than the Plaintiffs. Plaintiff gladly provides
further evidence that she had detailed lightly as to not burden this Court with needlessly
voluminous attachments, including:

1.  A Response Affidavit of Plaintiff Tiffany Bond

---

[14] https://www.maine.gov/sos/cec/elec/data/data-pdf/regenrolledactive.pdf
[15] See Attachment F
[16] *Id.*
[17] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶52, Page22

2. Mobile phone records[18]

3. Call transcripts of called previously noted to the Secretary of State's office and Governor's office detailing to the word the Plaintiff's diligence in offering a range of suggestions early in the process and continuing until near the end of the collection period.[19]

4. The emailed questions,[20] a transcript of the Secretary of State's response to the question on Maine Public,[21] and a subsequent social media post detailing to the Secretary of State office's social media account that the response was inadequate.[22]

5. A sample of social media posts detailing requests from both the Secretary of State's office and the Governor's office, how the State was limiting access to be able to collect signatures, and information regarding how voters can connect to sign a nomination petition.[23] Additional posts can be made available, but are voluminous and redundant.

6. Screen shots of the Governor's office contact form, demonstrating the message, that no email address was published on that page, and that no attachment option was available.[24]

---

[18] See Attachment A
[19] See Attachment B
[20] See Attachment D
[21] See Attachment C
[22] See Attachment E, Page 12
[23] See Attachment E
[24] See Attachment E, Pages 15-17

The record now proves, beyond a shadow of a doubt, that the Plaintiff was forthright, did not overstate her claims, and that either the State's record-keeping[25] or the Defendant's filings are inaccurate.

**Plaintiff did not request information she already had from the Governor's office or would have gotten if she had asked properly.**

This point would normally not rise to the level of its own heading, but this is sufficiently shocking that is has done so. The State implies that I should have followed up on their negligence to communicate with information I did not have. Not only would that waste the State's time, made precious from the pandemic, it shows an unacceptable level of ignorance from the State on its own technologies, and distain for its citizens.

The Defendants point to Plaintiff requesting information she "clearly had",[26] and further stated I could have found out additional information on permissible collecting from the DECD if I "had asked."[27] Taking these separately:

1. Plaintiff did not have the email as detailed in her affidavit.[28] Regardless, the State's position that this inquiry was cryptic[29], and required no response when a response would have taken mere seconds is untenable with the position of public service roles and their relationship to Maine's citizens.

2. The Defendants points that had Plaintiff contacted DECD, she would have received necessary information. At no point over numerous calls

---

[25] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶22, Page 10
[26] *Id,* ¶21, Page10
[27] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶16, Page 8
[28] See Response Affidavit of Plaintiff Tiffany Bond, ¶6
[29] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶21, Page 10

with the Secretary of State's office, was the Plaintiff directed to the DECD as the resource for her questions. She was directed, eventually, to the Governor's office.[30]  Further, when the Plaintiff stumbled into the DECD voicemail when trying to reach the Governor's office,[31] they apparently could not be bothered to return the call and have not acknowledged the existence of the call despite records to the contrary provided by Plaintiff.[32]

With this section, Plaintiff concedes that the State of Maine appears thoroughly incapable of implementing any form of online signature collection at present as the limitations of a simple web form are beyond the reach of the State's understanding.

### Plaintiff has sufficient support.

### Plaintiff's relief sought is not beyond the Court's power.

Defendants argue that this "extraordinary relief" is "beyond the Court's power".[33] Plaintiff disagrees for reasons previously argued. However, Plaintiff points out that also appears to be beyond the Legislature, the Secretary of State, and the Governor. Either the legislators should be dismissed and they have no role,[34] or this is only the prerogative of the Legislature.[35] Either this is the Governor's place, or it is not. Who then is left in charge or protecting access to our democratic republic in a pandemic?

---

[30] See Attachment B
[31] See Attachment B, Page 13
[32] See Attachment A, Page 4 and Attachment B, Page 13
[33] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶3, Page 2
[34] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶29, Page 13
[35] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶50, Page 21

Defendants consider the Plaintiff being a parent a personal problem,[36] but don't recognize that the Governor's Orders shuttered the schools and most child care facilities, making solutions effectively unavailable. Defendants consider not being in a party, not fundraising, and a variety of other factors listed as personal choices that are the cause of Plaintiff's failure,[37] yet they were not in a prior run, or were those choices substantially burdensome until the pandemic and the Governor's Orders added restrictions. None of the State's actors seem capable of taking responsibility for making ballot access functionally reasonable, Defendants appear to believe almost the entirety of the burden to accommodate a pandemic rests upon candidates, and leaves the Plaintiff with no other forum for relief but Court.

**Defendants' stance on Plaintiff's requested reliefs are not sufficiently compelling to prevent this Court from properly intervening.**

Defendants' responses to Plaintiff's requests were simply inadequate.

1. Defendant described how Plaintiff's proposed form would not meet requirements in their filing, but also did not attempt to collaborate while Plaintiff was making requests to create a form that would meet all parties needs. This was an incredibly easy, viable solution that would have protected the State's stated need for "detection of fraud and forgery in the nomination process depend[ing] upon the ability to examine original, inked signatures."[38]. The Secretary of State stated no authority to approve

---

[36] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶45, Page 18
[37] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶45, Page 18
[38] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶10, Page 5

the form.[39] The Governor's office did not bother to respond.[40] The

Legislature has declined to reconvene emergency session.

2.  The Defendants state a scanned pdf of a voter's signature would not be

    adequate.[41] Plaintiff did not request this accommodation, but the

    Commonwealth of Massachusetts just certified, with near zero voter fraud

    using a similar process.[42]

3.  It is unclear how a notary would stop a bad actor committing fraud,

    regardless of pandemic. Each signature is individually examined by the

    registrar.[43] Someone on a quest to commit fraud with would likely attest to

    false signature collection just as likely with or without a notary. Fraud on

    the number of original, inked signatures needed by Plaintiff that are

    individually examined would have to be so skilled that to be successful in

    any sort of volume that was not caught would be certainly improbable, if

    not mathematically impossible. No known candidates for the United States

    Senate were near enough to the ballot threshold that this would have been

    a viable fraud to perpetrate. Even so, the claim that a remote notary

    process was deemed sufficiently secure for filings in Court, but would

    "not adequately safeguard the integrity of the election process"[44] is

---

[39] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶20,
Page 10
[40] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶21,
Page 10
[41] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶22,
Page 10
[42] See Attachment J, 44/22,171 signatures filed were disqualified.
[43] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶8,
Page4
[44] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶17,
Page 9

nonsensical. Both permitting individual voters to sign a form for themselves only and/or waiving notary would have allowed a safe, secure, completely by mail process requiring zero in-person contacts that did not increase the likelihood of fraud.

4. Defendants argue that the State interest requires a "modicum of support to qualify for the ballot"[45] Plaintiff has demonstrated support through thousands of signatures, and has previously received 16,552 votes in a federal election, far in excess of the 4,000 signatures needed for ballot. It can be reasonably inferred that at least a quarter of prior voters would sign a nomination petition for Plaintiff to be able to cast a ballot again for the Plaintiff, but for the pandemic and failure of the Defendants to make reasonable accommodations to do so.

5. The State argues they have a role in "reducing the possibility of vote splitting"[46] Given that this election is a ranked choice vote election, this argument is mooted.

6. Defendants claim that the Plaintiff waited too long is a circular argument. Had Plaintiff filed early, Defendants would have argued that Plaintiff was not sufficiently diligent in attempts to proceed under accommodations. There is no time at which the Defendants would agree this lawsuit was proper. Plaintiff made a good faith attempt to communicate, work with the State, suggest accommodations, collect under unsafe and impractical

---

[45] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶10, Page5
[46] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶10, Page5

conditions, and filed suit when it became clear that with mail slowing down, absent the resources of a party or being independently wealthy that this collection period was simply not viable. It is a bad faith argument to argue against the deadlines set in this suit so that the Plaintiff, even in litigation, could apply as much diligence at possible to reach the hurdle made functionally unachievable by the Defendants' inaction.

## 4. Conclusion

Rather than examine whether or not the threshold for ballot access was a reasonable accommodation for the average person running for office that would be similar in difficulty of access, public safety, and fraud prevention to the burden placed by the legislature in non-pandemic periods, the Defendants have decided to use the implied authority of the government to ask this court to find me to be the legal equivalent of lazy, stupid, probably dishonest or exaggerating, and unpopular, which are apparently character flaws I should have had the foresight to compensate for by raising gobs of money…none of which would change the underlying safety concerns. The insidious question asked here by Defendants is if it was within the range of possibilities that I could make ballot without further accommodations. To that, the answer is yes – yes in the same way that it may have been "possible" to wait in line for hours to vote this year in a pandemic in Georgia,[47] and Wisconsin.[48] Ballot suppression is as nefarious as voter suppression; both should be likewise abhorrent to this Court.

---

[47] https://www.theguardian.com/us-news/2020/jun/11/atlanta-georgia-primary-election-voting-wait
[48] https://www.mlive.com/news/2020/04/wisconsin-voters-wait-in-line-for-hours-results-may-be-delayed-by-court-order.html

The question this Court should determine is not if the burden was "possible", but if it was "reasonable." Defendants efforts were not reasonable, nor was the impact on independent candidates reasonable. Persons should not have to risk their lives and the lives of their loved ones to qualify to run for office, nor should they be required to spend hundreds of thousands of dollars, or be in a political club to be a valid, viable candidate. Plaintiff has made ballot in a federal election before, was on pace to do so again, and the inability to complete signature-gathering was directly hindered by Defendants negligence and inaction, not Plaintiff's lack of diligence, honesty, or support within the community.

This Court should consequently enjoin the Defendants from enforcing the ballot nomination procedures contained in 21-A M.R.S §§353, 354 for the 2020 election cycle and provide relief in the form of reduction of the number of signatures required from 4,000 to 2,000 for the United States Senate race in Maine.

Date:  7/14/2020                    By:  ____ /s/  **Tiffany Bond** ____
                                    Tiffany Bond
                                    3 Colonial Road
                                    Portland, Maine 04102
                                    207.370.2088
                                    tiffany@bond4.me

## CERTIFICATE OF SERVICE

I hereby certify that this document filed via email will be sent electronically to all counsel registered and able to received electronic filings in this case on this 14th day of July, 2020.

Date:  7/14/2020                    By:  ____ /s/  **Tiffany Bond** ____

12